(Decided 10th January, 1889.)

## John Harris *vs.* J. Regester & Sons.

*Appeal bond—Number of Securities—Code of 1888, Art. 5, sec. 5—Statutory Bond—Voluntary Bond—Delivery— Approval of Bond by the Clerk of the Court—Deputy Clerk—Estoppel—Evidence.*

An appeal bond with only one surety, is not in conformity with section 5, of Article 5, of the Code of 1888, which provides that appeal bonds shall be executed "with sufficient securities."

And this defect is not cured by section 7, of Article 1, of said Code. which provides that "the singular always includes the plural and *rice versa*. except where such construction would be unreasonable."

Neither will the approval of such bond by the clerk of the Court give it any additional efficacy.

But while such bond does not conform to the statute, it does not follow that it is not good as a voluntary bond, if it meets the requirements necessary to give validity to instruments of that character.

Delivery is an indispensable requisite to its validity as a voluntary bond; and a delivery to the clerk of the Court in which it was filed. is not such a delivery as to make it valid. because he was not the agent of the obligees. and did not receive it in any such capacity.

Such bond, not conforming to the statute, and not having been delivered and accepted as a voluntary bond, no action can be maintained on it against the surety, when defence is taken on these grounds.

In such action the surety would be estopped from showing that he signed the bond upon the express understanding with the principal that another security would unite in it.

A deputy clerk can lawfully approve an appeal bond, his act being the act of the clerk. And in an action on such bond evidence to show the mental condition of the clerk at the time of the approval is inadmissible.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—At the trial the plaintiffs offered the two following prayers:

1. If the jury shall find from the evidence that the defendant, John Harris, executed the appeal bond offered in evidence, by signing and sealing the same, and shall further find that said bond was delivered to the clerk of the Baltimore City Court, or his deputy, and shall further find that said bond was approved in the manner set forth in the evidence, and that the judgment appealed from and set forth in said bond, was affirmed by the Court of Appeals of Maryland, and that said judgment has not been paid and satisfied to the plaintiffs, then their verdict must be for the plaintiffs.

2. If the jury shall find for the plaintiffs, then their verdict must be for the penalty of the bond, to be released on the payment of the actual sum which the jury shall find to be due the plaintiffs, which actual sum shall be the judgment recited in said bond, with interest on the same from the date it was rendered in the

Baltimore City Court, together with the plaintiffs' costs in said Court, and the appellees' costs in the Court of Appeals.

The defendant, Harris, offered the two following motions to strike out testimony taken subject to exceptions:

1. To strike out the two certificates from the Court of Appeals offered by plaintiffs, because they are not sufficient or legal evidence of affirmance by the Court of Appeals.

2. To strike out the docket entries offered in evidence, because the judgment therein described is not the same judgment described in the said alleged appeal bond.

The defendant also offered the six following prayers:

1. That there is no legally sufficient evidence of any such judgment as is described in said alleged appeal bond, and the plaintiffs are not entitled to recover.

2. That there is no legally sufficient evidence of the affirmance of said alleged judgment by the Court of Appeals, and the plaintiffs are not entitled to recover.

3. That the said alleged bond is not in conformity with the statutes providing for appeal bonds, in that there is but one surety thereon, and that the same did not operate to stay execution on the said judgment, and the plaintiffs are not entitled to recover.

4. That the said alleged bond is not in conformity with the statutes providing for appeal bonds, and the said clerk had no authority to accept or approve the same; there was no legal delivery thereof, and the plaintiffs are not entitled to recover.

5. That the law requires appeal bonds to be approved by the clerk, or the Judge, and if the jury find that said bond was not approved by the clerk of the City Court, but that the endorsement of approval thereon was placed there by a deputy, in the absence of the

clerk of said Court, and at a time when said clerk was unable, because of mental incapacity, to attend to business, then the said bond was not legally approved and the plaintiffs are not entitled to recover.

6. That even if the jury find the execution and delivery of said bond by said Harris, the plaintiffs are not entitled under the terms of said bond to recover against said Harris, the principal debt of $4,269.26, which formed part of the judgment offered in evidence.

The following special exceptions to the granting of the plaintiffs' first and second prayers were taken:

The defendant, Harris, specially excepts to the granting of plaintiffs' first prayer, because there is no legally sufficient evidence that the judgment referred to in said appeal bond, and the judgment affirmed by the Court of Appeals, are one and the same judgment.

And to the granting of their second prayer, because there is no legally sufficient evidence that the judgment referred to in said appeal bond, and the judgment of the Baltimore City Court, offered in evidence, are one and the same judgment.

The Court (STEWART, J.,) granted the prayers of the plaintiffs, and overruled the two motions, and rejected the six prayers of the defendant. The defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and McSHERRY, J.

*Albert Ritchie,* for the appellant.

*Samuel Regester,* and *D. Eldridge Monroe,* for the appellees.

There was no error in rejecting the third and fourth prayers of the appellant. The Code provides that

bond with sufficient sureties to be approved by the
clerk shall be given.· The rule of interpretation is
that the singular always includes the plural, and *vice
versa*, except when such construction would be unrea-
sonable. *Code of* 1888, *Art.* 5, *sec.* 5, *and Art.* 1, *sec.* 7;
*Peppin vs. Cooper*, 2 *Barn. & Ald.*, 431.

The rule of law is well settled that a bond given in
pursuance of some requirement of law, may be valid
and binding on the parties, though not made with the
formalities, or executed in the mode prescribed by the
statute under which it purports to have been given.
This rule rests upon the principle. that although the
instrument may not conform to the statute, in com-
pliance with which the parties executed it, it is a
contract voluntarily entered into upon a sufficient
consideration for a purpose not contrary to law, and is,
therefore, obligatory on the parties to it. *Morse vs.
Hodson*, 5 *Mass.*, 314; *Burroughs vs. Lowder*, 8 *Mass.*,
373; *Sweetser vs. Hay*, 2 *Gray*, 49; *Bank, &c. vs. Smith,
5 Allen*, 415; *McLuckie and Hitchins vs. Williams*, 68
*Md.*, 262; *Code of* 1888, *Art.* 5, *sec.* 5; *Treasurer, &c.
vs. Bates*, 2 *Bailey*, 362; *Peppin vs. Cooper*, 2 *Barn. &
Ald.*, 431.

The appellant's fifth prayer was properly rejected.
The deputy clerk of a Court of record in this State
does not derive his authority from the clerk. The
office is created by the Constitution, and the laws of
Maryland provide that the clerk shall be present in
his office either in person or by deputy every day except
Sunday for the transaction of business. *Constitution of
Md., Art.* 4, *secs.* 26 *and* 27; *Code of* 1888, *Art.* 17; *sec.* 3.

The fact that the witness Lowry testified that the
clerk, was at the time of the approval of the bond of
mental incapacity cannot be taken to show that there
was a vacancy in the office, nor indeed is it evidence
of his incapacity. He was a commissioned officer of

the Court, and only an inquisition according to law of his mental incapacity would be evidence in this case of the fact. The opinion of the witness could not establish it, especially in a collateral inquiry. Even an inquisition of lunacy put in evidence will not always be conclusive against persons not actually parties. 1 *Greenleaf on Evidence, sec.* 556, and cases there cited.

McSHERRY, J., delivered the opinion of the Court.

Samuel W. Regester, and others, trading as J. Regester and Sons, sued John McCart in the Baltimore City Court in an action of covenant, and recovered a verdict upon which judgment was duly entered. McCart then appealed to this Court. He, as principal, and John Harris, as surety, executed an appeal bond which was approved by a deputy in the office of the clerk of the City Court, the clerk himself being at that time under treatment in Spring Grove Insane Asylum for some mental disorder, though not having been adjudged *non compos mentis.* The judgment against McCart was affirmed by this Court in March, 1888, (68 *Md.,* 429,) and on the fourth of April following, suit was instituted by Regester and Sons against McCart and Harris on the appeal bond referred to. McCart suffered judgment by default to go against himself, but Harris appeared and pleaded several defences, amongst which were these, viz., that the bond was never delivered; that it was not approved by the clerk or the Judge of the Baltimore City Court, and that it is not in conformity with, or authorized by, the statutes providing for appeal bonds. Issues were properly framed and the case proceeded to trial. During its progress two exceptions were taken by Harris, one to the exclusion of evidence, and the other to the granting of the appellees' and the rejection of the appellant's prayers. Judgment having been finally entered against Harris, he has taken this appeal.

The principal and controlling question in the case arises under the fourth prayer presented by the appellant and rejected by the Court. Many of the other questions discussed in argument are of the narrowest technical character, not at all decisive of the case and not likely to arise again; whilst the remaining ones, though subordinate to the main one, are of sufficient importance to require a separate consideration.

The appellant's fourth prayer asked the Court to instruct the jury, "that the said alleged bond is not in conformity with the statutes providing for appeal bonds, and the said clerk had no authority to accept or approve the same; there was no legal delivery thereof, and the plaintiffs are not entitled to recover." This goes to the very foundation of the case and if it correctly announces the law wholly precludes a recovery. Hence, whether this bond is or is not in conformity with the statutes providing for appeal bonds is the inquiry to which our attention must be first directed.

The *Code of* 1888, *Art.* 5, *sec.* 51, provides that "no execution upon any judgment or decree   *   *   *   * shall be stayed or delayed unless the person against whom such judgment or decree shall be rendered or passed   *   *   *   * or some other person in his or their behalf shall immediately upon praying an appeal   *   *   *   * enter into bond with *sufficient securities* in at least double the sum recovered, &c." Precisely the same words *"sufficient securities"* are used in the Code of 1860, Art. 5, sec. 31; and this section was taken from the Act of 1826, ch. 200, sec. 1, which repealed and replaced the Acts of 1811, ch. 171 and 1713, ch. 4; all of which required *sureties* in such an appeal bond. The plural, *securities*, or *"sureties,"* is thus used throughout these statutes, (the earliest of which was enacted a century and three-quarters ago,) and it can scarcely be assumed that it was not designedly done. The form

given in *Harris' Entries* provides spaces for two securities; and Mr. Evans, in his work on *Maryland Practice*, in treating of appeal bonds, and referring to the Act of 1826, ch. 200, says on page 430, "this bond must be with *two sureties*, approved, &c." Though the form referred to, and the statement made by Mr. Evans are not authoritative declarations of the meaning of the statute, they are cited to indicate the general understanding of the profession, and to show the construction followed in actual practice for a great number of years. Where the Legislature has deemed it expedient to require only a single surety on a bond, it has distinctly declared that such bond should be entered into "with security" (*Art.* 9, *sec.* 19, *Code of* 1888,) or "approved and sufficient security" (*Art.* 5, *sec.* 89, *Ib.*,) &c. It would seem, therefore, upon looking to the language of the statute, that an appeal bond, effective to stay execution on a final judgment or decree, must be entered into by at least two sufficient securities. Whilst this question has never been passed upon by this Court, exactly similar statutory provisions have been construed by other appellate Courts, whose decisions are entitled to great weight. *Blake vs. Sherman,* 12 *Minn.,* 420; *Beebe vs. Young, et al.,* 13 *Mich.,* 221; *Van Wezel vs. Van Wezel,* 3 *Paige,* 38; *North Am. Coal Co. vs. Dyett,* 4 *Paige,* 273. In *Blake vs. Sherman* an attachment was issued upon an affidavit of the plaintiff against the property of the defendant. A motion was made to dissolve the attachment, and among other grounds it was urged that the bond required by the statute had not been given. Sec. 131, page 467, Gen. Stat. provided that "before issuing the writ the Judge or Court commissioner shall require a bond on the part of the plaintiff, with *sufficient sureties*, conditioned, &c." The instrument objected to was not a *bond*, but an undertaking or covenant signed by the plaintiff, as

principal, and *one* surety. The Court on page 424 says, "we think that this section of the statute is not to be regarded as directory. There must be a *bond* (a term well understood) with a penalty and a condition and with *two* or more sureties."

Sec. 6738 of 2 *Howell's Annotated Statutes of Michigan*, which was taken from sec. 144, ch. 90, Revised Statutes of 1846, and also from sec. 3597 of the compiled laws of 1857, provides that upon an appeal from a decree or final order of a Circuit Court in Chancery, "the appellant shall, within  *  *  *  *  forty days file with said register a bond to the appellee or appellees, with *sufficient sureties*, approved by a Circuit Judge, &c." In *Beebe vs. Youny, et al.*, which was an appeal in chancery, a motion was made to dismiss the appeal upon two grounds, the second of which was, "that the appeal bond is executed by *one* surety only." Judge Cooley, in delivering the opinion of the Court upon this motion, said: "The objection to the bond we think well taken. The statute requires a bond with sufficient *sureties;* and a single surety does not answer its demands. *Van Wezel vs. Van Wezel*, 3 *Paige*, 38; *North Am. Coal Co. vs. Dyett*, 4 *Paige*, 273. And as the statute provides that unless 'such' bond shall be filed within the time limited no appeal shall be allowed, we must dismiss the appeal unless we are authorized to permit an amendment or to suffer a new bond to be substituted."

In *Van Wezel vs. Van Wezel*, there was a motion to dismiss the appeal. Chancellor Walworth, in the course of his opinion, said: "But the appeal was not regularly entered, because, by law, there should have been *two* or more sureties in the appeal bond. The statute requires a deposit of money on the appeal, or a bond with *sureties*, in the plural, (2 R. S. 605, sec. 80.) Although the number is not specified in this part of

the statute, it requires two to constitute sureties."
The appeal was dismissed.

In *North Am. Coal Co. vs. Dyett,* the same Chancellor
observed: "The eightieth section of the statute, (2 R.
S. 605,) declares that the appeal shall not be effectual,
until a bond with *sureties* shall be given to the adverse
party, and approved by the proper officer of the Court.
Under this statute, it has been decided that the term
sureties, in the plural, requires two or more sureties to
join in the bond."

We see no reason for not giving to the language of
our own statute the same construction. When the
Legislature used the word "securities," in the plural,
we are certainly not warranted in saying that only one
surety was intended. The General Assembly must be
regarded as having meant what the word used by it
distinctly imports; and it would be little, if any thing,
short of direct judicial legislation to hold that *one*
surety is tantamount to, or gratifies the demand for,
"sufficient securities." The Legislature has declared
in plain terms that in such a bond as this, there must
be securities. This is a matter wholly within its dis-
cretion and undoubtedly within the scope of its exclu-
sive powers. The expediency or policy of such an
enactment cannot be enquired into or impeached by
any other tribunal known to our laws. Obviously,
therefore, the Courts are powerless to nullify the
statute in this particular, by substituting for its
actual provision a different requirement. The conse-
quences of this conclusion in this case may be very
injurious to the appellees; but the law is so written,
and any attempt to rescue the bond by a strained or
a forced construction of the Act of Assembly, would,
to the extent that it unsettled the law as enacted,
lead to more serious evils.

It has been insisted that *sec. 7, Art. 1, of the Code*
cures the defect in the bond. That section provides,

"The singular always includes the plural, and *vice versa*, except where such construction would be unreasonable." If, however, under this section we are to treat the plural as *meaning* the singular, and therefore to read sec. 51, of Art. 5 of the Code, which requires "sufficient securities" to be given, as though the singular number had been used, and consequently that only *one* security is necessary, it is not perceived why *sec.* 20 *of Art.* 16, which provides for a *surety or sureties* in a trustee's bond, should not be understood as necessarily requiring at least *two*, if under the rule of interpretation the singular *means* the plural. The ultimate effect of such a construction would be that the rule of interpretation would directly reverse the provisions of the Code by making *one* security sufficient in cases where *securities* are mentioned, and by requiring at least *two* sureties where only *one* is declared necessary in the body of the law.

It follows from what we have said that the bond not being such as the statute required, did not operate to stay execution on the judgment recited in it. It was not valid as against the appellees had they proceeded to enforce their judgment. They were not concluded by it. If the surety is held liable would it not be enforcing "a contract where there was no mutuality?" *Tucker, et al. vs. State, use of Kneighton,* 11 *Md.*, 331. The approval of the bond by the clerk gave to it no additional efficacy, because it was not such a bond as he was authorized to approve upon appeal from a final judgment.

But whilst the bond did not conform to the statute, it by no means follows that it might not have been good as a voluntary bond, had it met the other requirements necessary to give validity to instruments of that character. In the recent case of *McLuckie vs. Williams,* 68 *Md.*, 262, where a suit had been brought upon an

attachment bond made payable to the defendant, instead of to the State as required by the Code, this Court said: "The bond though not effective to maintain an attachment is not illegal: it is not forbidden by any statute, nor does it contravene any principle of morality or public policy; it is simply a voluntary obligation, the act and deed of the obligors by which they declared themselves to be held and firmly bound. * * * * * A bond not required by any statute, and not being in such form and containing such terms as to accomplish the expectations and purposes of its makers will, *if not impeachable in other respects*, nevertheless stand as their act and deed." In the case now before us had the bond sued on been delivered to the appellees by the obligors, we have no doubt whatever that it could have been recovered on upon proof of a breach of its condition. But delivery is an indispensable requisite to the validity of a voluntary bond. It must be delivered by the party whose bond it is, to the other; *Bac. Abr., Obligations C*, though the delivery and acceptance may be by attorney. In statutory bonds the approval and filing take the place of delivery. The law does not in such case require the assent of the obligee. *Burgess vs. Lloyd*, 7 *Md.*, 178. The bond in this case was not delivered to the obligees or to any agent or attorney of theirs. It was never intended to be so delivered. Its delivery to the clerk was not such a delivery as to make it a valid voluntary bond, because he was not the agent of the obligees and he did not receive the bond in any such capacity. There was, therefore, in fact, no legal delivery of the bond at all, and it did not, as it could not without delivery, become binding on the surety as a voluntary obligation.

As the bond did not conform to the statute, and as it never became binding on the surety as a voluntary bond, because not delivered and accepted; the con

clusion necessarily follows that no action whatever
can be maintained upon it when defence has been taken
on these grounds; and the fourth prayer of the appel-
lant should therefore have been granted. In reaching
this result we·have not overlooked the cases relied on
by the appellees. Those cases announce the same doc-
trine as that laid down in *McLuckie vs. Williams.* In
*McLuckie's Case* no question in regard to the delivery
and acceptance of the bond was suggested or consid-
ered; but two inquiries were distinctly submitted to
the Court by agreement, and one of these was, whether
the departure from· the requirement of the statute
that the State should be named as the obligee in the
bond rendered it absolutely invalid. And the Court
held, *no other objection being interposed,* that it was en-
forceable as a voluntary bond.

Where a bond was given by a cashier in a penalty
of twenty thousand dollars, with ten persons as securi-
ties, who bound themselves in the sum of two thousand
dollars each, severally and not jointly; the *statute*
provided that "the˙cashier before he enters on the
duties of his office, shall give a bond or bonds with
two or more sureties to the satisfaction of the direc-
tors with condition, &c., * * * * * and in no
case shall bonds be taken for a less sum than twenty
thousand dollars. * * * *" In an action on this
obligation the Court held that the bond did not .con-
form to the statute, but a recovery was sustained upon
the ground that it was a valid voluntary bond. It
had been delivered to and accepted by the Bank.
*Bank of Brighton vs. Smith,* 5 *Allen,* 413. Numerous
other cases involving the same principle are to be
found and they are undoubtedly sound in their con-
clusions. But they are distinguishable from this case,
for here the distinct defence is taken that the bond
was never delivered, and without delivery and accept-

ance it can have, as a voluntary bond, no validity whatever.

As the conclusion which we have announced on the question just considered, will necessitate a reversal of the judgment appealed from without an award of a new trial, we are not required to pass upon the other points discussed in the argument. *Code, Art.* 5, *sec.* 19. But there are two other questions which we think ought to be disposed of.

The appellant offered to prove that he signed the bond upon the express understanding with McCart that another security would unite in it. Upon objection being made the Court excluded the proffered evidence and the appellant excepted. The first bill of exceptions presents this question. No arrangement between McCart, the principal, and Harris, the surety, with respect to the addition of another security could be binding on or could affect the rights of the obligees, in the absence of knowledge or information on their part of the existence of such an understanding, unless there was something on the face of the bond to put them on inquiry as to the manner of its execution. The rights of the obligees ought not to be put in peril, or to be impaired by any secret and undisclosed conditions or agreements made between the obligors themselves. If the bond shows on its face that several were expected to sign it who have not signed it, the obligees who accept it would then take it with notice that the obligors who do sign it may set up in defence the want of execution by the others. Where this does not appear and where no notice is traced to the obligees, the sureties must be held as declaring to all persons interested to know that they are parties to the covenant and bound by it. They cannot therefore contravene the statement thus made and relied on without a fraud on their part and injury to another; and where these

things concur an estoppel is imposed by law. *Dair vs. United States*, 16 *Wall.*, 1; *State vs. Peck*, 53 *Maine*, 284; *Cutler vs. Roberts*, 7 *Neb.*, 4. In this last cited case it was held "that a bond which was perfect on its face, apparently duly executed by all whose names appear therein, which purports to be signed and delivered by the several obligors, and is actually delivered by the principal without stipulation, reservation or condition, cannot be avoided by the sureties upon the ground that they signed it on the condition that it should not be delivered, unless it should be signed by other persons who did not sign the same, if it appear that the obligee had no notice of such condition, and nothing to put him upon inquiry as to the manner of its execution, provided he has been induced upon the faith of such bond to act to his own prejudice." The ruling, therefore, set out in the first exception was entirely correct.

Much stress was placed on the fifth prayer offered by the appellant. An instruction was sought by it to the effect that the approval of the bond by the deputy, under the circumstances stated in the beginning of this opinion, was a nullity. There is no doubt that a deputy can lawfully approve an appeal bond,—his act is the act of the clerk. The law does not contemplate that the clerk, in his own person, shall be constantly in attendance at his office. *Code*, 1888, *Art.* 17, *sec.* 3. And the Constitution of the State makes provision for the appointment of deputies "to perform together with themselves" (the clerks) "the duties of said office." *Con. of Md.*, *Art.* 4, *secs.* 26 *and* 37. The testimony offered as to the mental condition of the clerk was clearly inadmissible and should have been objected to. His sanity could not properly be brought in question in that collateral way. If such a course of proceeding was allowable it would lead to

great confusion and much uncertainty in the administration of justice. The prayer which we are now considering submitted to the jury, on a trial of issues framed in an action of debt, to find whether the clerk was mentally capable of approving the bond; and this too, without affording him the slightest opportunity to be heard in his own behalf. The temporary delirium of a clerk, produced by an acute attack of illness, might, upon the same ground, be relied on, in this collateral way, to defeat every act done by his deputy during the continuance of the malady. And so the sanity of every public official might be brought into issue in the same way. There is no rule of law more firmly established than that which prohibits such a course of proceeding. The prayer was therefore properly rejected.

In conformity with the views herein expressed the judgment will be reversed without ordering a new trial.

> *Judgment reversed, and*
> *new trial refused.*

(Decided 10th January, 1889.)

Judges MILLER and ROBINSON dissented.