MILLER LUMBER INDUSTRIES, INC. *v.* MARVIN W. BROWN ET AL.

[No. 1643, September Term, 1979.]

*Decided July 15, 1980.*

The cause was argued before Gilbert, C. J., and Lowe, J., and Jacob S. Levin, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*Leonard M. Murphy,* with whom was *John C. Hancock* on the brief, for appellant.

*Mark C. Treanor* for appellee Maryland National Bank. *Walter W. Sawyer* and *Myerberg, Sawyer & Rue* on the brief for appellees Browns.

Lowe, J., delivered the opinion of the Court.

This appeal is concerned with a performance bond securing to its owners and their mortgagee the cost of completing the construction of a home. Troubling in our deliberation is the fact that the defaulting builder has not been found in default by judgment or opinion; however, since the issue was not raised on appeal, nor raised as a defense by the surety, 72 C.J.S. *Principal and Surety* § 255 (1951), we will proceed on the presupposition that the building contract was breached. The evidence was certainly sufficient to so indicate.

On August 20, 1975, Marvin and Billie Brown contracted with White Point Construction Company, Inc., to build a house on land they had purchased in California, Maryland. Their construction lender, Maryland National Bank, required that White Point obtain a performance bond before

any money was advanced. Mr. Peter Rucker of Miller Lumber agreed to provide a performance bond with Miller Lumber as surety, with the understanding that all checks would include Miller Lumber as payee. Before signing the bond on behalf of Miller, Mr. Rucker wrote on the bottom of the bond just below the signature line, "All draw checks to be made jointly". Maryland National Bank accepted the bond and began issuing checks payable to White Point and the Browns for the construction of the house, but without including Miller Lumber as payee on the checks. By the spring of 1976, White Point had gone out of business leaving the Brown's house only partially completed. After making arrangements with another contractor (Cameron Construction Company) to complete the house, the Browns brought suit against White Point and Miller Lumber. Miller Lumber responded to the suit and filed a third party claim against Maryland National Bank alleging that the Bank's failure to name Miller Lumber as a payee on the checks served to release Miller Lumber from its obligation as surety. The Browns then amended their declaration to include counts against the Bank based upon the allegations in the third party claim. Maryland National Bank moved for summary judgment alleging that it had not contracted and had never agreed to issue checks jointly to Miller. The Bank's motion for summary judgment was granted at a hearing on February 17, 1978. The judge noted that there had admittedly been no communication directly between Miller and the Bank, and the phrase appended by Miller to the bond was too

> "indefinite, vague, in that it doesn't name what parties jointly it should be, it just says jointly. From the argument I assume the checks were made jointly to the Browns and the construction company."

On February 23, 1978, at trial, judgment was entered in favor of the Plaintiffs, Marvin and Billie Brown, against Miller Lumber in the amount of $13,372.54. The court found that Miller had made it a condition precedent that draw

checks were to contain its name jointly, but the "vague" phrase by which it attempted to so indicate was not part of the contract because it appeared after the signatures.

"THE COURT: Well, the Court's of the opinion that the performance bond, that all above the signatures is the bond. The Court finds that this bond was executed by Mr. White as principal and the Miller Lumber Company as surety. This was a condition placed upon the loan by the bank. The surety is made out to Miller Lumber Company and the Maryland National Bank. This bond was given to the bank, and upon its reliance thereon the money was loaned and disbursed.

I have no doubt that Mr. Rucker made it a condition precedent that the check was to be written in his name, which he testified to, but certainly it's basic law that you can't change a written instrument with a verbal contract. This was a verbal instruction to Mr. White. Whatever duty he breached to Mr. Rucker the Court is not here to decide; but when this instrument was executed, that is, Exhibit No. 12, it was relied upon and there was consideration for this loan. In other words, the bank loaned the money to the Browns and the Browns paid for it. But to rule that anything that's written below the signatures of the people is just unconscienable [sic] to this Court. Anybody could have a contract or a contract could be entered into between two parties and one or the other party at a later date wrote something outside the signatures. I think it's just unconscienable [sic] that anything some person would write below the signatures would be enforceable. It's just not good law.

I don't have any doubt, as I said, that Mr. Rucker placed this condition upon Mr. White. Mr. White by no stretch of the imagination was either the agent of the bank or the agent of the Plaintiffs, the Browns. Mr. White was looking out for himself. In

fact, there was a condition that he had to give this performance bond and it was for the benefit of the Browns. So, as I say, it's very clear that certainly the contract, you have to look to the four corners of the contract, and this, in this Court's opinion, the contract ends with the signatures and not what is placed thereunder. Had this been placed in the body of the contract above the signatures, there would be no dispute; but it was not put in there, and certainly the parties are not bound.

So, the Court feels it has no alternative but to grant the relief as prayed and judgment nisi will be entered up in favor of the Plaintiffs, Mr. and Mrs. Brown, against the Miller Lumber Company."

From both of those judgments, Miller Lumber appealed on March 13, 1978. On March 28, 1979, we dismissed that appeal pursuant to Md. Rule 605 a. The claims in the action below which had not been adjudicated were the Browns' claim against White Point and Miller Lumber's cross-claim against White Point. In response to motions to modify decree and for final judgment on less than all claims, the court below entered a decree of December 7, 1979, and an order of January 2, 1980, making the express findings called for by Md. Rule 605 a, thereby permitting an appeal. Miller Lumber again noted its appeals propitiously.

— summary judgment —

In ruling on the Bank's motion for summary judgment, the trial judge stated preliminarily:

"Very well. In ruling on the motion for summary judgment the Court must find that there's no dispute as to a material fact raised relative to the issue of a contract between the Maryland National Bank and the Miller Lumber Company which would make them liable or, conversely so, if it does not find that, then there's a disputed fact.",

and ultimately decided:

> "So, for the reasons stated the Court finds that there is no dispute as to a material fact raised relative to the issue of contractural [sic] obligations between Miller Lumber and the bank which would make them liable, so therefore the Court must grant the motion for summary judgment."

Because of the precise allegations set forth in the third party claim, that was the proper issue to be determined, *i.e.,* whether there was a contractual obligation undertaken by the Bank under the contract between Miller and White.

> ". . . it may be that Plaintiffs are not bound by the said condition precedent intended to be made a term of said bond by Third Party Plaintiff, or it may be that said condition may legally be interpreted not to be a condition precedent in so far as Plaintiffs' rights are concerned, in either of which events, Third Party Plaintiff may be liable to Plaintiffs for all or a portion of the sums claimed by Plaintiffs in their said Declaration; and that, if Third Party Plaintiff is found to be liable to Plaintiffs in any amount such liability is the direct result of the failure of Third Party Defendant to perform its contractual obligation undertaken by it under the contract between Third Party Plaintiff and Third Party Defendant as herein set forth."

At this stage, however, the judge may only decide whether there is a genuine dispute as to a material fact, and, if not, what the ruling of law should be upon those undisputed facts. In doing so, he must resolve all inferences against the moving party, *Brewer v. Mele,* 267 Md. 437, 442 (1972); *Leonhart v. Atkinson,* 265 Md. 219, 220 (1972). When the judge found that the phrase, "[a]ll draw checks to be made jointly", was "quite indefinite, vague, in that it doesn't name what parties jointly it should be . . .", there immediately arose a factual dispute, *i.e.,* the meaning of the ambiguous term. Extrinsic evidence was admissible to determine the

intention of the contracting parties, *Pulaski v. Riland,* 199 Md. 426, 431 (1952), which made it a factual question, *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 610 (1959). See also *Della Ratta, Inc. v. Amer. B. Com. Dev.,* 38 Md. App. 119, 130 (1977). The judge observed from argument on the summary judgment that he "assumed" the checks had been made jointly to the Browns and White. Thus he appeared to have concluded that interpretation of the ambiguous phrase to have been the proper one.

> "From the argument I assume the checks were made jointly to the Browns and the construction company."

Such a conclusion at that juncture was improper. It was enough that he found ambiguity in the phrase which if interpreted in the light most favorable to Miller and least favorable to the Bank, could have provided evidence of a contractual obligation.[1] But he could go no farther, and while the evidence at the subsequent trial did not show that the Bank accepted such condition as a contracting party, that was of no consequence on the summary judgment motion.[2] Although summary judgment was inappropriate at this juncture, the error was harmless for reasons which will become evident hereafter.

— the trial —

Ironically, after having heard the extrinsic evidence admitted at the subsequent trial to explain the ambiguous phrase, the judge, as factfinder, had "no doubt" that Miller's vice-president,

> "Mr. Rucker made it a condition precedent that the check was to be written in his name."

---

**1.** The deposed testimony of Rucker which the court interpreted to reach its conclusion on summary judgment contained sufficient from which an inference of agency may have been taken by a factfinder, as between White and the Bank. Such interpretations of testimony are factfinders' duties, not a judge's role on summary judgment.

**2.** Since the Bank was no longer in the case in any event, any evidence relating to a contract with it would have been immaterial.

But this was a condition that he found had been placed on the principal, White.

> "I don't have any doubt, as I said, that Mr. Rucker placed this condition upon Mr. White."

In the absence of the Bank as a party to the case, the significance of the appended phrase took on a different connotation. The question was no longer whether the Bank contracted with Miller through White. The issue had become whether the Bank, as an obligee,[3] failed to perform a condition precedent. If it had failed to do so, the surety cannot be required to perform, see *Williston on Contracts* § 10-1244 (1957); *Rice v. Fidelity and Deposit Co.,* 103 F. 427 (8th Cir. 1900); *Hubbard v. Reilly,* 98 N.E. 886 (Ind. 1912).

For the surety to escape liability, however, it must be shown that the condition was known to the obligees.

> "No arrangement between . . . the principal, and . . . the surety, with respect to the addition of another security could be binding on or could affect the rights of the obligees, in the absence of knowledge or information on their part of the existence of such an understanding, *unless there was something on the face of the bond to put them on inquiry as to the manner of its execution." Harris v. Regester & Sons,* 70 Md. 109, 122 (1889) (emphasis added).

This rule of suretyship law is an outgrowth of the equitable doctrine of estoppel, *i.e.,* unless an obligee was apprised of a condition precedent or put upon inquiry by something on the face of the bond, he who executed the bond with the condition should better bear the loss than an innocent who has

---

**3.** At the summary judgment hearing the judge stated that:

"No where in the performance bond does the bank's name appear in there."

The bond was a printed form, however, with the Bank's name boldly printed as an obligee in four places along with the Browns whose names had been filled in by hand.

unknowingly moved to his detriment. See *McIver Constr. Co. v. Hurwitz,* 144 Md. 451, 462 (1924).

When the judge below decided that the phrase on the face of the bond was ambiguous it was tantamount to holding as a matter of law, that it was sufficient to put the obligees upon inquiry. He said, in fact, that:

> "Had this been placed in the body of the contract above the signatures, there would be no dispute . . . ."

The surety then was not estopped from raising the defense of an unperformed condition precedent, which the court found upon the evidence to have been the fact. We come now to the reason upon which the judge decided that the condition was unenforceable as a matter of law, *i.e.,* because a

> "contract ends with the signatures and not what is placed thereunder."

We know of no law, case or statute, so proclaiming and neither appellee has brought such law to our attention. The position of a contractual condition is relevant as evidence to persuade a factfinder that it was present at the time of execution, that it was known, or should have been known, to the parties upon execution, etc. Location on the page may be a factual consideration for the factfinder in determining whether a phrase was appended after execution, just as an uninitialled interlineation on the face of a contract raises some question of whether the addition was mutually made and intended as a part of the agreement. But there was no evidence or allegation of such facts here; therefore, such deviation of form did not, as a matter of law, obviate the contract or term appended.

It is noteworthy that the Browns do not argue the law to be other than we have observed it. Their contention is that the holding of the court was not precisely what the court appeared to say in the quotation above, but that

> "[f]rom the testimony and arguments at trial, it is

clear that the Court's decision was based upon the fact that neither the Browns nor Maryland National had actual or constructive notice of the agreement between Miller and White concerning the payment of the draw checks, and was not based on the positioning of the vague and indefinite statement on the bottom of the performance bond."

We have already addressed the obvious answer to that contention, i.e., Miller could not be — and was not — estopped from proving an unperformed condition precedent to his contract with White for the benefit of the Browns (and the Bank) because the ambiguous condition on its face put the obligees upon inquiry.

The testimony showed, however, that the Browns had never seen the contract:

"Q Mrs. Brown, when did you first become aware that there had been a bond executed by Miller Lumber and Mr. White?

A About a week before settlement when I was called that we would be having settlement November 6.

Q And had you seen that bond?

A No, sir.

Q Had you been given a copy of it?

A No, sir.

Q Was it shown to you on the date of settlement?

A No, sir.

Q So you had merely been told but you didn't actually know whether there was a signed bond, is that correct?

A I had been told.

Q By Mr. White.

A By Mr. White and by Mr. Gass."

But they cannot now argue that because the evidence disclosed they had not seen the bond after its execution, they should be excused from the duty to inquire made evident from the phrase on the face of the instrument. If they intend to rely upon the bond, which was a Bank requirement to loaning them money, they are at the very least charged with the terms of the agreement which appear upon its face, and that includes the phrase found to have been ambiguous by the trial judge, which ambiguity was sufficient to put them upon inquiry (*Regester, supra*). See *Williston on Contracts* § 90A (1957) (acceptance of a paper which purports to be a contract indicates an assent to its terms whatever they may be, and it is immaterial if they are in fact unknown).

The evidence did not show whether the Bank owed any duty of disclosure to the Browns although it did inferentially, if not explicitly, show that the Bank did not apprise the Browns of the appended condition. Indeed, the evidence indicated that the Bank officials were not aware of it although the bond was in its possession. While it is possible that evidence could have been produced to sustain the second count of the Browns' amended declaration which impleaded the Bank as an alternative defendant, no appeal was taken by the Browns from the granting of summary judgment on behalf of the Bank.

The evidence did convince the factfinder that the surety had appended a condition precedent which had not been performed and since he was kind enough to provide us his factual conclusions, as well as his legal result, we will therefore reverse on the erroneous ruling as a matter of law but see no purpose in remanding for retrial. The error of granting summary judgment on behalf of the Bank as to Miller is erased by the result we reach favorable to Miller. The same error as it affects the Browns was not appealed and we can do naught to remedy it.

*Judgment reversed.*
*Costs to be paid by appellees.*