(Decided January 23rd, 1861.)

* * *

## JOHN M. BROWN and HENRY R. V. CAWWOOD, vs. JOHN MURDOCK and WM. H. BRAWNER.

A *counter-security bond*, given to sureties upon an executor's bond, stipulated that the executor should well and truly perform his duties, as such, and that the obligors should, from time to time, and at all times thereafter, save, defend, keep harmless and indemnify such sureties, and

Brown and Cawwood *vs.* Murdock and Brawner.

their property, from all actions, suits, payments, costs, charges and damages, by reason of their suretyship on the testamentary bond. HELD:

1st. That this bond is responsible for a judgment against these sureties, and which they have been compelled to pay, even though the *devastavit* by the executor, upon which such judgment was founded, was committed *before* its execution and delivery.

2nd. Indemnity against *apprehended* loss, by failure of the executor, who has wasted or misapplied the assets, to satisfy judgments against him therefor, is within the intent and provisions of the law authorizing counter-security bonds to be given.

A plea, by the obligors in a counter-security bond, that the sureties in the executor's bond had not defended the action against them on such bond, but had suffered the judgment to be recovered by their default and without any defence, is defective in not averring that there was a legal defence which they might have made to the action.

A counter-security bond was signed by the defendants on the 21st of March 1851, and left in the possession of the principal obligor and executor, who had been required by the orphans court to execute such a bond to the plaintiffs as sureties on the testamentary bond. It was next seen, in December 1851, among the official papers of the register of wills, which were to be acted upon by the court, and was approved by the court on the 9th of March 1852. HELD:

1st. That the presence of the obligors, in person or by attorney, was not necessary to the valid delivery of the bond; the facts of this case, and reasonable deductions from them, are sufficient to support the plaintiffs' averment under the plea of *non est factum.*

2nd. It was not their obligation as a statutory bond until approved, but if the defendants allowed it to remain in the office of the register of wills until approved, they cannot avoid the consequences, and the delay in its approval cannot operate against the plaintiffs, the obligees therein.

Delivery as well as approval may depend on circumstances, such as the place where the bond is found, the endorsements upon it, and inferences fairly deducible from the facts of the transaction.

APPEAL from the Circuit court for Charles county.

*Action,* brought on the 9th of November 1858, by the appellees against the appellants and Joseph Murdock, upon a *counter-security bond,* executed on the 21st of March 1851, by the defendants and Louisa A. Murdock, since dead, to the plaintiffs, as obligees, in the penalty of $3000, and approved by the orphans court on the 9th of March 1852, and conditioned thus:

"The condition of the above obligation is such, that whereas the above named John Murdock and William H. Brawner, at the instance and request of the above bounden Joseph Murdock and Louisa A. Murdock, executors of Thomas Murdock, deceased, became bound, together with the said Joseph Murdock and Louisa A. Murdock, to the State of Maryland, in the sum of $10,000, current money, as securities on the testamentary bond of the said Thomas Murdock, deceased, as by said bond or obligation and condition thereof, remaining in the register of wills' office in Charles county, reference thereto being had, will more fully appear, if, there-fore, the said Joseph Murdock and Louisa A. Murdock, exec-utors aforesaid, shall do, well and truly perform the acts of executors of the said Thomas Murdock, deceased, as afore-said, according to law, and do and shall perform all and every other act, matter and thing, on the part of the said Joseph Murdock and Louisa A. Murdock, to be done and performed, according to the true intent and meaning of the said recited obligation, and also shall and do, from time to time, and at all times hereafter, well and sufficiently save, defend, keep harmless and indemnify the said John Murdock and William H. Brawner, his heirs, executors and adminis-trators, and his goods and chattels, lands and tenements of and from all actions, suits, payments, costs, charges and damages by reason thereof, then the above obligation shall be void, it shall otherwise remain in full force and virtue in law."

The declaration alleges as a breach of this bond, that the said parties in the said condition mentioned, did not, from time to time, and at all times after the making of said bond, well and sufficiently save, defend, keep harmless and indem-nify the said plaintiffs from all actions, suits, payments, costs, charges and damages incurred in consequence of their secu-rityship on the testamentary bond aforesaid of Thomas Mur-dock, deceased, but the said plaintiffs in fact say that judg-ment was obtained against them on said testamentary bond, together with Joseph Murdock, at the December term 1857, of the Circuit court for Charles county, at the suit of the

State of Maryland, at the instance and for the use of John H. Cox, guardian to Balaam Murdock, for the sum of $1583.93⅓, with interest from the 9th of December 1857 until paid, and costs, which said judgment the said plaintiffs have been required to pay, and have paid to the party for whose use said suit was brought and judgment obtained. Whereupon the plaintiffs claim $3000.

The defendants, Brown and Cawwood, appeared and filed ten pleas, of which the *first, seventh* and *eighth* were subsequently withdrawn. The others are, in substance, as follows:

2nd. That no *devastavit* was committed of the property and assets of Thomas Murdock, deceased, by the said Joseph Murdock and Louisa A. Murdock, as his executors, after the alleged bond sued on in this cause was received and approved by the orphans court of Charles county.

3rd. That no such *devastavit* was committed after the date when the alleged bond purports to have been executed.

4th. That the judgment recovered in the case of the State use of Cox, guardian to Balaam Murdock, at December term 1857, of the Circuit court for Charles county, and which is the judgment sought to be recovered in this suit, was recovered against the plaintiffs in this suit as defendants in that suit, by their default, and without any defence by them, either in person or by attorney or counsel, and therefore, they ought not to have and maintain this their action against these defendants.

5th. That all and every *devastavit* of the property and assets of Thomas Murdock, deceased, if any, was committed by his said executors, before the date when the alleged bond purports to have been executed.

6th. That all and every such *devastavit*, if any, was committed before the alleged bond was approved by the orphans court of Charles county.

9th. That the alleged bond, sued upon in this case, was not executed and delivered by these defendants and is not their act and deed.

10th. That the alleged bond sued on in this case is not their deed.

Brown and Cawwood *vs.* Murdock and Brawner,

The plaintiffs *demurred* to the 2nd, 3rd, 4th, 5th and 6th pleas, and assigned as causes of demurrer: 1st, as to all these pleas except the 4th, that they assert the liability of the defendants only for *devastavits* committed after the execution and approval of said bond, whereas, by its condition, they are liable for *devastavits* committed before its execution and approval, and that said pleas do not answer the whole declaration in this, that by the declaration, and bond made part thereof, the defendants are liable for all *devastavits* committed by the executor of Thomas Murdock, and by reason of which the plaintiffs suffered loss and damage, whether such *devastavits* were before or after the execution and approval of said bond. 2nd. As to the 4th plea, that it does not show that the plaintiffs had any defence, whatever, against the judgment in said plea mentioned, or the claim upon which said judgment was obtained, and that no fraud is alleged in said plea.

These demurrers were sustained by the court, (CRAIN, J.,) and the case was then tried upon issues joined upon the 9th and 10th pleas.

*Exception.* The plaintiffs proved the signatures of the defendants to the original bond, upon a copy of which this suit was brought, and further proved by T. A. Smith, register of wills for Charles county, that he was elected to that office in November 1851, and entered upon its duties in December of that year, and that from his own recollection, and as it appeared from the records of the orphans court for that county, and from an endorsement of approval with his signature appended as register, said original bond was approved by said orphans court on the 9th of March 1852; that all bonds were considered as recorded from the time they were received and approved by the court, and that the term of the court at which this bond appears to have been received and approved, commenced on the 2nd of February 1852, and ended on the second Tuesday of April following, and that it appeared from an inspection of this bond, that there was no endorsement upon it except that of approval and recording as above stated; that when he entered upon his duties as register, in

Brown and Cawwood *vs.* Murdock and Brawner.

December 1851, he received this bond from Daniel Jenifer, his predecessor, and the then register, and that it was found by him in the desk of the register in which was kept the papers of his office, which were to be acted upon by the court. Upon cross-examination this witness stated, that at the time of the reception and approval of this bond, he had no recollection that either of the defendants was present in the orphans court.

The defendants then proved, by R. T. Tubman, who was elected judge of the orphans court for Charles county in November 1851, entered upon the duties of his office on the 2nd of December of the same year, and served out his full time, that from his own recollection, and as it appeared from the records of the proceedings of said court, which were then in court and inspected, he was present on the 9th of March 1852, when the bond was received and approved as above stated, and that at the time of such reception and approval neither of the defendants were present in the orphans court, and that he never saw either of them in said court in reference to the reception and approval of said bond. They further proved by R. W. Bryant, the subscribing witness to said bond, that he was present when it was signed by the defendants, and witnessed the signing of the same; that it was signed at the house of Joseph Murdock, one of the principal obligors therein and one of the executors of Thomas Murdock, deceased, and that the residence of said Joseph Murdock was about twelve miles from the office of the register of wills of Charles county, and that after the bond was signed by the defendants it was left in the possession of the the said Joseph Murdock. The defendants then closed their case, by proving from the records of the orphans court for Charles county, that on the 20th of January 1851, at the instance of the plaintiffs, the said court ordered that Joseph Murdock and Louisa A. Murdock, the executors of Thomas Murdock, should execute a counter-security bond to the plaintiffs, as securities on the testamentary bond of said Thomas Murdock, and also proved payment of the judgment for the recovery of which this suit is brought. Upon the aforegoing

evidence, the defendants asked the court to instruct the jury:

1st. That the aforesaid bond was signed and left with Joseph Murdock, as stated by Bryant, the subscribing witness, on the 21st of March 1851, and was not received and approved by the orphans court until the 9th of March 1852, and that the defendants were not present and consenting to the reception and approval of the said bond by the said court, that then there was not a sufficient delivery of said bond, by the defendants, to bind them, and the plaintiffs are not entitled to recover.

2nd. That unless the jury find there was a delivery of the bond in this case, either in person or by attorney, to the orphans court, by these defendants, there was not a sufficient delivery of the said bond to bind these defendants, and the plaintiffs cannot recover.

3rd. That if the jury find, that the bond in this cause was signed and left with Joseph Murdock, as stated in the testimony of Bryant, and was not received and approved by the orphans court until the 9th of March 1852, that an unreasonable time elapsed between the signing and the reception and approval thereof, and that the plaintiffs are not entitled to recover, there not having been a sufficient delivery to bind them, unless the jury further find that the defendants were present in the orphans court, in person or by attorney, consenting to the reception and approval of said bond.

The court rejected these prayers, and to this ruling the defendants excepted, and the verdict and judgment being against them, appealed.

The cause was argued before Tuck, Bartol and Goldsborough, J.

*R. S. Reeder* and *H. M. Murray,* for the appellants:

1st. The questions arising, under the demurrers to the pleas, relate to the construction and effect of the bond sued on. The terms of the bond are extremely indefinite. The language, that the executors *"shall* and do well and truly per-

form the acts of executors," &c., according to law, seems to make the condition of the bond, and what follows is only to be done for the maintenance of this condition, and this is shown by the words, "by reason thereof," at the end of the condition. Now, the appellants insist, that the *devastavit* having occurred before the bond was given, it cannot be brought within the conditions of the bond, and it was a fraud on the defendants if they were induced or persuaded to sign the bond without having notice given them of the existing *devastavit.* A surety is never held liable beyond the clear terms and meaning of his contract, and as against a surety the contract cannot be carried beyond the strict letter of it. *7 H. & J.,* 160, *Chase vs. McDonald, et al. 2 H. & G.,* 82, *Birkhead vs. Saunders.* 11 *G. & J.,* 382, *Bruce vs. The State.* It is against the policy and most vigilant guardianship of the law to give the contract, and especially when in the shape of a bond, a *retrospective* operation.

2nd. It certainly cannot be in harmony with legal reason and wisdom, that the plaintiffs, as sureties on the first bond, should suffer judgment by default for the *devastavit,* if any, for which they were liable, so as to make it a judgment against these defendants, and subject them to liability without notice or opportunity of defence.

3rd. There was no legal delivery of the bond, because not delivered to the obligees of the defendants. It is not a public bond, and its reception and approval by the orphans court can have no force to give it validity on the score of delivery, but even if it were a public bond, to be approved by the court, it was detained for an unreasonable length of time, and against the idea of a perfect delivery, under the facts of the case. *5 Gray,* 440, *Chase vs. Breed. 6 H. & J.,* 231, *Craufurd vs. The State. 8 Md. Rep.,* 387, *Edwards vs. Bruce.*

*F. H. Stockett* and *Alex. Randall,* for the appellees:

1st. The demurrers to the 2nd, 3rd, 5th and 6th pleas were properly sustained. Such bonds are authorized by the Acts of 1798, ch. 101, sub. ch. 14, sec. 11, and 1829, ch.

Brown and Cawwood vs. Murdock and Brawner.

216, and the bond now sued on, by its very terms and in express words, covenants to save the appellees harmless from every description of loss or injury which they could or might be subject to, by reason of their aforesaid suretyship. This meets precisely the loss sustained, by reason of the recovery of the judgment against them, at December term 1857, and by them paid. But even if the condition of the bond did not, in express words, cover such a loss, yet this court would construe the terms of it to cover all loss or injury which the executors by their default should subject their sureties to, according to the manifest intent and object for which the bond was given, unless such default was of a class plainly excluded from the covenants of the bond, and it can make no difference whether the *devastavit*, upon which the judgment against the appellees was founded, was committed *before* or *after* the execution of this bond.

2nd. The 4th plea does not show that the appellees had any defence, whatever, against the judgment mentioned in this plea, on the claim upon which that judgment was obtained, and no fraud or collusion is alleged in the plea. A judgment against the executors must have preceded that against the appellees. *Act of* 1720, *ch.* 24. The demurrer to this plea was, therefore, properly sustained.

3rd. The rulings upon the prayers were also correct. The execution of the bond and leaving it in the possession of Joseph Murdock, one of the obligors, for the benefit of the plaintiffs, and the deposit of the same in the orphans court, constituted him an agent for the delivery of the bond, if such agency was required. But to constitute a sufficient delivery in law, it was not necessary that the defendants, either in person or by attorney, should have delivered the same to the court, or been present when the same was deposited there. The effect and validity of the bond was in no respect impaired for the want of the presence of the defendants, in person or by attorney, in the court, or their consent to its reception or approval, nor can the lapse of time, between its execution and approval, have the effect of impairing its obligation to the plaintiffs. 1 *H. & G.*, 327, *Union Bank vs.*

*Ridgely.* 1 *Md. Rep.,* 1, *Milburn vs. The State.* 3 *Md. Rep.,* 67, *Stewart vs. Redditt. Ibid.,* 213, *Glenn vs. Grover, et al.* 4 *Md. Rep.,* 444, *Wilson vs. Ireland.* 8 *Md. Rep.,* 118, *Edelin vs. Sanders.* 11 *Md. Rep.,* 41, *Hutchins vs. Dixon.*

TUCK, J., delivered the opinion of this court.

This record shows that the appellees were sureties on the testamentary bond of Joseph and Louisa Murdock, as executors of Thomas Murdock, and that the bond now in suit was executed to them, as obligees, by direction of the orphans court, for the purpose of counter-securing them against loss as such sureties. The bond is dated the 21st of March 1851, and endorsed, "Approved by the court, March 9th, 1852." The plaintiffs claim to recover the amount of a judgment rendered against them as sureties in the testamentary bond, at December term 1857, of the Circuit court for Charles county, and which they had been required to pay.

The pleas filed by the appellants, who were the sureties in the bond of indemnity, cover three defences, though stated in different forms: 1st, *non est factum;* 2nd, that no *devastavit* was committed by the executors after the execution and delivery of the bond, and that every *devastavit,* if any was committed, occurred before the bond was given; 3rd, that the judgment set forth in the declaration was recovered against the plaintiffs, as defendants therein," by their default, and without any defence by them either in person or by attorney." Issue was joined on the pleas denying the execution and delivery of the bond, and to the others the plaintiffs filed demurrers, which were ruled good. The verdict on the issues of fact being against the defendants, they appealed, and we are to review the decisions below as well on the questions raised by the pleadings, as upon the exceptions taken at the trial before the jury.

We are of opinion that the condition of the bond embraces the matter relied upon as a breach, even if we concede that the *devastavit* had occurred before the execution of the bond. It stipulates, substantially, that the executors shall perform

their duties, as such, and from time to time, and at all times thereafter, save, defend, keep harmless and indemnify these appellees, and their property, from all actions, suits, payments, costs, charges and damages, by reason of their suretyship on the testamentary bond.  The pleas, which present this question, admit the recovery and payment of the judgment as alleged in the declaration, and repayment of the money is within the plain meaning of the instrument, unless the appellants' counsel be correct in their construction, that it can be sued only in cases where the alleged *devastavit* occurred after its delivery.

The Acts of 1798, ch. 101, sub-ch. 14, sec. 11, and 1829, ch. 216, authorize bonds of this kind, where sureties conceive themselves in danger of suffering from the suretyship. They need not wait until a *devastavit* shall have been committed and ascertained by process of law; in many instances this might be too late.  They may proceed whenever the executor, by his conduct in the administration, shall give them cause to apprehend loss, without waiting for legal proceedings against him at the instance of creditors.  If the assets have been wasted, or are in a course of misapplication, there is a stronger reason for resorting to this protection, in order to defend themselves against the consequences of such mismanagement on the part of the executor, though their liability to creditors cannot be ascertained until there is a judgment against their principal in the bond.  *Act of* 1720, *ch.* 24.  *Dorsey vs. State,* 4 *G. & J.,* 471.  Indemnity against apprehended loss, by failure of the executor to satisfy such process, we take to be within the intent and provisions of the law, and that for such purpose, the present bond was a proper precaution.

It is not a sufficient answer to say, as urged in argument, that this view of the case makes the bond operative beyond the intent of the parties in entering into the contract, and fraudulently, because retrospectively.  Where the law requires counter-security, parties becoming liable on such bonds should ascertain the condition of the administration before they incur the risk.  As they express themselves, in the writing, they

must be bound, and will not be allowed, after the security has been taken and approved, and others have suffered by the misconduct of their principal, to allege in defence their ignorance in this respect. There is no fraud in the case, and no warrant for any argument on that ground. The pleadings present a mere question of interpretation of the contract, under the law, and, for the reasons assigned, we are of opinion that the demurrers to the 2nd, 3rd, 5th and 6th pleas were properly sustained.

We also agree with the court below, as to the ruling on the issue in law, on the 4th plea, that the present plaintiffs had not defended the action against them on the testamentary bond. It is defective in not averring that there was a legal defence, which they might have made to the action. Assuming that there was none such, the present appellants were less damaged than they might have been by a fruitless, unnecessary litigation. Whether, if in proper form, the plea would have been an answer to the action, we need not decide.

The first prayer of the defendants we understood their counsel as having abandoned, at the bar; the others relate—as does the first—to the execution and delivery of the bond. The evidence shows that it was signed by the appellants and left in the possession of Joseph Murdock, the principal, and one of the executors, who had been required by the court to "execute a counter-security bond to the plaintiffs, as securities on the testamentary bond of Thomas Murdock." It was next seen, in December 1857, among the official papers of the register of wills, which were to be acted upon by the orphans court, and was approved on the 9th of March following. We are of opinion that the presence of the obligors, in person or attorney, was not necessary to the valid delivery of the bond. Courts should estimate the conduct of men according to the nature of the transaction, and in such cases as this, with reference to the purposes and object of the instrument. This bond was placed in the hands of a party interested in having it duly accepted, to save the penalties imposed by law, if he failed to give the counter-security, and the

reasonable presumption is, that the parties intended that he should lay it before the court for acceptance. This is the custom in many of the counties, in reference to bonds in the clerks' and registers' offices, where sureties do not reside near the county seat. Delivery, as well as approval, "may depend on circumstances, such as the place where the bond is found, the endorsements upon it, and inferences fairly deducible from the facts of the transaction." *Burgess vs. Lloyd,* 7 *Md. Rep.,* 201. The facts and reasonable deductions in the present case are, in our judgment, sufficient to support the plaintiffs' averment under the pleas of *non est factum.*

Nor do we think that the delay in approving the bond, relied upon in the third prayer, should operate against the appellees. When the bond was presented to the orphans court does not appear; it may have been held under consideration for reasons satisfactory to the court, and we should not presume any thing against the obligees more than against the obligors, since, during the interval, the former were in no better condition to have hastened the action of the court than were the latter. It was not their obligation, as a statutory bond, until approved, (7 *Md. Rep.,* 201,) but if they allowed it to remain in the office until accepted, they cannot avoid the consequences.

Upon all the rulings of the court, we think the judgment should be affirmed.

*Judgment affirmed.*

(Decided January 23rd, 1861.)