WILLIAM . McLUCKIE, and ADAM E. HITCHINS *vs.*
DAVID J. WILLIAMS.

*Attachment on Original process—Act of 1864, ch. 306—*
*Bond made Payable to the Defendant instead of to the*
*State—Action on the Bond—Recovery of Costs.*

Although under the Act of 1864, ch. 306, the bond in attachment pro-
ceedings on original process, is required to be made payable to the
State of Maryland, yet where the bond is erroneously made payable
to the defendant, and the attachment proceedings are dismissed, a
suit may be maintained on such bond.

In such suit the plaintiff may recover the costs in the attachment suit,
but nothing else, unless a suit against the plaintiff for wrongfully
suing out the attachment, has been previously prosecuted to judg-
ment.

To make the bondsmen liable for the damages by reason of the attach-
ment proceedings, such damages must first be ascertained in a suit
against the plaintiff alone.

APPEAL from the Circuit Court for Alleghany County.

An attachment on original process under the Act of
1864, ch. 306, was sued out by William McLuckie against
the property of David J. Williams. An attachment bond
was given by McLuckie with Adam E. Hitchins as surety,
and was made payable to David J. Williams, the defend-
ant in the attachment, instead of to the State of Maryland
as required by the statute. The attachment was after-
wards dismissed, and suit was thereupon brought on the
attachment bond by the obligee against the obligors.
The defendants filed a demurrer to the declaration which
was overruled. The case was tried and the jury gave a
verdict for the plaintiff. Judgment was entered on the
verdict. The defendants appealed.

The cause was argued before ALVEY, C. J., STONE, MIL-
LER, IRVING, and BRYAN, J.

*William Brace,* for the appellants.

*A. Hunter Boyd,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

We are requested by the counsel in the cause to give our opinion on two questions: First, whether a suit can be maintained on a bond given to obtain an attachment on original process, when the bond is made payable to the defendant; and secondly, whether a suit can be maintained on such bond, when the defendant in the attachment has not brought suit against the plaintiff for wrongfully suing out the attachment.

The Act of 1864, ch. 306, directs that the bond shall be made payable to the State of Maryland, and that it shall be conditioned for satisfying all costs which may be awarded to the defendant, or to any other person interested in the proceedings, and all damages which shall be recovered against the plaintiff for wrongfully suing out the attachment. In the form given in the statute for the condition of the bond, the language is slightly varied; in case of breach, the plaintiff is required to pay the defendant " all such costs in said suit," and such damages as shall be awarded against the plaintiff " in any suit which may hereafter be brought for wrongfully suing out " the attachment. Every attachment issued without such a bond is declared to be illegal and void, and directed to be dismissed. If a bond be given in accordance with the terms of the statute, and the attachment be afterwards quashed, the obligors become liable according to the terms of the condition. If the bond does not meet the requirements of the statute, and the attachment is nevertheless issued and afterwards quashed or dismissed, the injury to the defendant is the same as in the former case; and there is no meritorious reason why the obligors should not be liable according to the tenor of their bond. Nor is it easy

to see why according to any legal principle they should be discharged. The bond, though not effective to maintain an attachment, is not illegal; it is not forbidden by any statute, nor does it contravene any principle of morality or public policy. It is simply a voluntary obligation; the act and deed of the obligors by which they declared themselves to be held and firmly bound. The seal to a bond imports a consideration, and hence it is that in an action at law the failure of consideration cannot be inquired into or proved. A bond not required by any statute, and not being in such form, and containing such terms as to accomplish the expectations and purposes of its makers, will, if not impeachable in other respects, nevertheless stand as their act and deed. Obligors have always been held liable on their voluntary bonds, and ought to be so held. A party *sui juris* is certainly able to contract, and if the contract is embodied in an instrument under seal, it has all the validity which can be imparted by a valuable consideration. We do not speak now of cases where the obligee has no capacity to receive a bond; nor where a bond is void by statute unless it is made in a prescribed form; nor where it is exacted from the obligor without authority of law. Our opinion is that the first question ought to be answered in the affirmative.

The express terms of the statute make the bond liable for the costs of the attachment suit. We suppose, therefore, that there can be no difficulty in recovering them in an action on the bond as soon as there is a failure to prosecute the suit with effect, that is, with success. But the bond is also liable for such damages as might be recovered against the plaintiff in any suit which might thereafter be brought for wrongfully suing out the attachment. If the defendant should bring a suit against the plaintiff and recover damages for the wrongful attachment, the bond would be liable for these damages. In such an event the non-payment of them by the plaintiff is a breach of the bond.

It would be a strange anomaly if the suit could be brought before the breach had occurred. The plain and obvious meaning of the statute is that the suit is to be brought against the plaintiff alone. It would be a great misuse of language to speak of " *such damages as shall be awarded against him,*" if it was intended to mean such damages as should be awarded against *the bondsmen.* It must be remembered that it is not necessary that the plaintiff should be one of the bondsmen. The statute provides that the bond shall be taken "from the plaintiff, or some person on his behalf." Language might have been used which would have imposed responsibility directly on the bondsmen; as if the condition of the bond had been that they should pay all damage caused by the attachment. Provisions of this kind have sometimes been made in our legislation, as in the twenty-third section of Article 10 of the Code relating to appeals from orders quashing attachments, and the twenty-third section of Article 5, relating to appeals from orders in equity. Our conclusion is that a suit may be brought on the bond to recover the costs in the attachment suit. But that nothing else can be recovered on the bond, unless a suit against the plaintiff for wrongfully suing out the attachment has been prosecuted to judgment.

The appeal comes before us on a demurrer to the declaration. All errors in pleading were waived, and by agreement of counsel the case was rested on the two questions which we have considered. The Circuit Court overruled the demurrer, and as a cause of action is stated in the declaration, we must affirm the judgment.

*Judgment affirmed.*