## STATE v. TAYLOR *et al.*

Under Comp. Laws, Sec. 1382, declaring that no official bond shall be void for want of compliance with the statute, but shall be valid in law for the matter contained therein, an official bond, voluntarily executed in a penal sum greater than that prescribed by statute, may be enforced to the full amount of its penalty. FULLER, J., dissenting.

(Opinion Filed, Oct. 5, 1897.)

Appeal from circuit court, Hughes county. Hon. LORING E. GAFFY, Judge.

Action on an official bond. From a judgment for plaintiff entered upon a verdict directed by the court, the sureties appeal. Affirmed.

The facts are stated in the opinion.

*John H. Perry, Thos. Sterling, E. B. Korns* and *C. T. Howard,* for appellants.

The amount of the excess in the bond over the sum required by statute is purely voluntary, without consideration and cannot be enforced. Graham v. State, 66 Ind. 386; Mc-Caraher, v. Com., 5 Watts & Serg. 87, 39 Am. Dec. 106; Polk

.v. Plummer, 2 Humph. 500, 37 Am. Dec. 565; State v. Rhodes, 6 Nev. 352; Brandt on Suretyship, § 443; Murfree on Official Bonds, §§ 61 451.

Coe I. *Crawford*, Attorney General, for the state.

The bond sued on may be regarded as a voluntary bond given in lieu of a statutory bond, and the excessive condition being voluntary and not extorted, is enforecable.   U. S. v. Hodson, 10 Wall. 395;   U. S. v. Bradley,   10 Pet. 345;   U. S. v. Tingrey,  5 Id. 127;   U. S.   v. Linn,  15 Id.  290; Mechem on Public Officers, §§ 273, 272.

CORSON, P. J.   This is an action upon the official bond of William Walter Taylor as state treasurer.   Taylor made no defense, but his sureties appeared and answered.   The trial was to a jury, and a verdict was directed by the court for the plaintiff, and the sureties appeal.

The bond was in the usual form, except that the penalty was $350,000, instead of $250,000, prescribed by the statute. At the close of the evidence the counsel for the state moved the court to direct a verdict for the full sum of Taylor's defalcation, ascertained to be $344,277.45, to which the following objection was made.   The sureties objected for the reason that they were not liable for a sum greater than $250,000, the amount of the bond prescribed by the statute.   The objection was overruled, and the appellants excepted.   The assignment of errors are that said circuit court erred in directing a verdict against said appellants for a sum greater than $250,000, and that said court erred in entering judgment for a sum greater than the penalty prescribed by the statute.

It is provided by Sec. 6, Chap. 93, Laws 1891, that the bond of the state treasurer shall be in the penal sum of $250,-000.   The learned counsel for the appellants contend that, as the penalty of the state treasurer's bond is fixed by statute at $250,000, the court should have limited the recovery upon the bond in suit to that sum, notwithstanding the penalty specified

in the bond is $350,000; and they insist that the judgment entered in 'excess of the $250,000 is erroneous as against the sureties upon the bond, and that it should, therefore, be reversed, or modified. The learned attorney general contends that the bond, having been executed voluntarily, and upon a sufficient consideration, should be regarded as a voluntary or common-law bond, given in lieu of a statutory bond, and as such can be enforced to the full amount of the penalty therein specified; and that the judgment for the sum of $344,277.45, being less than the penalty specified in the bond, should be affirmed. The only provision contained in the statutes of this state upon the construction to be given to official bonds is section 1382, Comp. Laws, which reads as follows: "The bonds and oaths of all civil officers shall be construed to cover duties required by law subsequent to giving them; and no official bond shall be void for want of compliance with the statute, but it shall be valid in law for the matter contained therein." Precisely what the legislature intended by the clause, "but it shall be valid in law for the matter contained therein," is somewhat difficult to determine, unless it intended to hold bonds valid as voluntary or common-law bonds when they failed to conform to the statutory requirements. But, whether this was the intention of the lawmaking power or not, it is clear that by this provision it intended that no official bond should be held invalid by reason of a failure to comply with the terms of the statute, and that it should be held "valid in law for the matter contained therein." This would undoubtedly include the penalty as well as the conditions contained in the bond. In the earlier cases upon the subject of official bonds not executed in conformity with the statute, it was strenuously contended by counsel for the defendants in those cases that the bonds were void, and could not be enforced, but the courts were disinclined to so hold, and either held them valid to the extent they conformed to the statute, or valid as common-law bonds, when voluntarily executed upon sufficient consideration. U. S. v. Tingey, 5 Pet.

115; Same v. Bradley, 10 Pet. 343. The general rule in regard to such bonds under one line of decisions is thus stated by the supreme court of Massachusetts in Bank v. Smith, 5 Allen, 413: "The rule of law is well settled that a bond given for the faithful performance of official duties, or in pursuance of some requirement of law, may be valid and binding on the parties, although not made with the formalities, or executed in the mode, provided by the statute under which it purports to have been given. The rule rests upon the principle that, although the instrument may not conform to the special provisions of a statute or regulation in compliance with which the parties executed it, nevertheless it is a contract voluntarily entered into upon a sufficient consideration, for a purpose not contrary to law, and therefore it is obligatory on the parties to it in like manner as any other contract or agreement is held valid at common law. Morse v. Hodsdon, 5 Mass. 314; Burroughs v. Lowder, 8 Mass. 373; Sweetser v. Hay, 2 Gray 49." This rule is fully sustained by the supreme court of the United States. U. S. v. Linn, 15 Pet. 290; Same v. Hodson, 10 Wall. 395. In the latter case the court, speaking through Mr. Justice Swayne, after commenting on the case of State v. Findley, 10 Ohio 51, says: "But we prefer to place our judgment upon the broader ground marked out by the adjudications of this court, to which we have referred. Every one is presumed to know the law. Ignorance, standing alone, can never be the basis of a legal right. If a bond is liable to the objection taken in this case, and the parties are dissatisfied, the objection should be made when the bond is presented for execution. If executed under constraint, the constraint will destroy it; but where it is voluntarily entered into, and the principal enjoys the benefits which it is intended to secure, and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense. In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of rights of the government and

of the liability of the obligors." In the former case an instrument purporting to be the bond of the receiver of public lands, being without seal, was held not to be a bond, within the meaning of the statute; but the court further held that, being a contract entered into by competent parties, and founded upon a sufficient consideration, it was a valid contract at common law, and could be enforced against the principal and sureties. Goodrum v. Carroll, 2 Humph. 490; State v. Findley, 10 Ohio 51; Garretson v. Reeder, 23 Iowa 21. Two decisions have been called to our attention in which the courts have held that bonds, the penalty in which was in excess of the statutory requirements, were valid to the extent of the prescribed penalty, but void as to the excess. The first is M'Caraher v. Com., 5 Watts & S. 21, decided by the supreme court of Pennsylvania in 1842. The opinion of the court upon this point is brief, and the question does not seem to have received very full consideration. The other is Graham v. State, 66 Ind. 386. An examination of this case discloses the fact that the decision was based largely, if not entirely, upon the Indiana statutes, in which, among other things, it is provided that such a bond shall not be invalid, nor the principal or surety discharged, "but the principal and surety shall be bound by such bond * * * to the full extent contemplated by the law requiring the same." Other sections of their statute are referred to by the court bearing upon the question, and it concludes its opinion upon this branch of the case as follows: "Construing these statutory provisions all together, we think it clear that the legislature intended that, whatever departure there may have been from the provisions of the statute requiring the bond, in taking it, as to its form or substance, which includes the amount of the penalty named in it, the principal and surety should be bound upon it, to the same extent, and no further, as if the bond had been in all respects such as the law requires; in other words, that the principal and surety should be deemed liable on such a bond as the statute requires." There are other

cases cited holding the very familiar doctrine that, when there are several conditions in a bond, some of which are valid and others invalid, and the valid and invalid provisions can be separated, the bond will be held good as to the valid provisions, and void as to the others, unless the entire bond is declared void by the statute. But that question is not involved in this case. There is no provision in the statute prohibiting parties from entering into a contract assuming a greater liability than that prescribed in the statute, or that makes a bond void for the excess. It is true, Taylor could not have been required to furnish a bond in excess of $250,000; but he and his sureties were at liberty to assume a greater liability, if they chose to do so. The principal and sureties have voluntarily assumed this greater liability upon a sufficient consideration. Upon what theory consistent with any recognized principle of law can this court relieve the appellants, and reduce their liability to $250,-000? The statute has conferred upon the court no such power, except as a court of equity, when the pleadings and proofs are such as to authorize the court to reform the instrument. But in such case fraud, mistake, or some other ground recognized by courts of equity must be alleged and proven to entitle the parties to relief. Various defenses are interposed to the complaint in this actton, but there is no defense calling into exercise the equitable power of the court. Counsel for appellants have failed to point out to the court any well-defined theory consistent with the well established principles of law upon which this court would be authorized to hold that the appellants are only liable on this bond for $250,000, notwithstanding their own voluntary agreement to make good the losses of the state to the extent of $350,000. No fraud, mistake, or coercion being shown by which they were induced to enter into the agreement, this court must presume that the parties intended to assume the liability which they, by their contract or bond, have in fact and in law assumed. In the absence, therefore, of any statute authorizing this court to relieve the appellants

from this contract, we are not aware of any law that would authorize it to change the agreement. We may, in conclusion, repeat substantially the language of the supreme court of the United States in the Hodson case, *supra*. If the bond was subject to the objection now taken in this case, the objection should have been made when the bond was presented for execution; and, having been executed voluntarily, and without objection, there can be no injustice in holding that the bond, as executed, should be the measure of the rights of the state and the liability of the appellants. Our conclusions, therefore, are that the bond, though not in conformity with the statute, was made in pursuance of its provisions, and is a valid and binding obligation to the extent of the penalty named therein; and that the circuit court committed no error in directing a verdict for $344,-277.45,—the full amount of Taylor's defalcation,—that sum being within the penalty of the bond; and that the judgment entered thereon should be affirmed. The judgment of the circuit court is affirmed.

FULLER, J., dissenting.