## ÆTNA CASUALTY & SURETY CO. v. PEOPLE OF STATE OF ILLINOIS, for Use of ADAMSON et al.

### No. 5132.

Circuit Court of Appeals, Seventh Circuit. July 14, 1934.

Rehearing Denied Oct. 1, 1934.

Wm. H. Haight and John W. Day, both of Chicago, Ill., for appellant.

Maurice F. Lord, of Aurora, Ill., for appellees.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge.

[ ] Did appellant's bond cover the default of William Decker as treasurer of the Kishwaukee Special Drainage District?

The facts: William Decker, the county treasurer of De Kalb County, gave his official bond whereon appellant appeared as surety. It was drawn in the language of the statute (Smith-Hurd Rev. St. Ill. 1933, c. 36, § 2; Cahill's Ill. Rev. Stat., chap. 36, par. 2) and was approved by the County Board. During his term of office Decker received money which came from the sale of bonds by the Kishwaukee Special Drainage District. This money he erroneously (although in good faith and upon the advice of counsel) paid

holders of other bonds previously issued by this Drainage District, which bonds, upon their maturity, were presented for payment. The money thus diverted from its lawful use was realized from the sale of bonds which were issued for the sole purpose of repairing the open ditch in the Drainage District. The court held that Decker's payment of the previously issued bonds out of the proceeds of this last issuance was erroneous and illegal, and he was liable for such mispayment.

Whether appellant, the surety, also became liable on its bond for this mispayment is the principal question raised on this appeal.

The Illinois statute reads (chapter 36, par. 2):

"Each county treasurer, before he enters upon the duties of his office, shall also execute a bond in such penalty and with such security as the county board shall deem sufficient, which bond shall be in substance in the following form, to-wit: * * *."

The condition of the bond which appellant executed was as follows:

"The condition of the above bond is such, that if the above bounden William Henry Decker, shall perform all the duties which are or may be required by law to be performed by him, as treasurer of the said County of De Kalb, in the time and manner prescribed or to be prescribed by law, and when he shall be succeeded in office, shall surrender and deliver over to his successor in office all books, papers, moneys and other things belonging to said County, or appertaining to his said office, then the above bond to be void; otherwise to remain in full force."

Appellant's argument is, in brief, that the individual, Decker, held two offices. He was treasurer of the county, and he was also treasurer of the Special Drainage District. While his selection as treasurer of the District was due to his holding the office of county treasurer, still the positions were, appellant contends, separate and distinct, and the bond given by the county treasurer did not secure the acts of the treasurer of the Drainage District.

Sections of the statute which opposing counsel both cite as relevant are set forth in the margin.[1]

---

[1] "3. In all districts, in counties under township organization, the supervisor of the town in which the district is situated shall be the treasurer of the district. When the district lies in two towns, the supervisor of one of the towns, to be designated by the commissioners, shall be the treasurer. In all special drainage districts the county treasurer shall be the treasurer of the district. In all cases the treasurer shall give bonds to the commissioners, not less than double the

Appellant's counsel argue earnestly and persuasively that section 71, above quoted, alone governs, on the theory of the application of the maxim generalia specialibus non derogant. He further contends that any reference or resort to section 3, above quoted, is unjustifiable. In other words, he contends that where provisions of section 3 and section 71 conflict, are repugnant, or are inconsistent, then the terms of the later section alone govern. Our attention is directed to the requirement of section 3, of a bond of a prescribed amount, to be approved by the commissioners, and filed with the clerk as being inconsistent with the requirements of a bond in section 71 of the Drainage Act. The argument is not without force, but we are not persuaded that one section entirely excludes the other. They should be read together, and the two of them read in the light of the language appearing in section 4, above quoted, which deals with the duties and liabilities of the county treasurer.

To be more specific, it is apparent that even though the maxim applies as a governing rule of construction, there are provisions which do not conflict, are not repugnant to each other, nor are they inconsistent. The provision which makes the county treasurer the treasurer of the special drainage district of his county is substantially the same in both sections. Moreover, there are similar non-conflicting provisions respecting the bond in both sections. Provision for the execution of a bond is made in both instances. Section 3, however, provides that a bond shall not be required of a county treasurer whose official bond is deemed sufficient.

Appellant's argument is that the absence in section 71 of the last sentence of section 3 makes the two sections of the statute repugnant in so far as they deal with bond provisions. With this position, we cannot agree. We think the more logical construction of both statutes results from a reading of them together. One supports the other. They are not in the least inconsistent or repugnant. Section 3 makes a special bond unnecessary if the county treasurer's bond is sufficient. This is a reasonable provision. Section 71 is silent on the subject. If a bond is required and given, then sections 3 and 71 are in accord as to its provisions and amount. One provides that the bond shall be approved by the commissioners. The other merely provides that the bond shall run to the commissioners. Again there is nothing here that is inconsistent. In the absence of specific provision, we think the commissioners would be the proper parties to approve the bond.

We can see nothing in these two requirements which deals with the necessity or conditional necessity of a bond being given by the county treasurer to the commissioners to secure moneys collected or received by him as treasurer of the Drainage District which absolves him from a liability which arose by virtue of his statutory duty as defined by section 4, c. 36, Smith-Hurd Rev. St. Ill. 1933, paragraph 4, c. 36, Cahill's Revised Statutes; namely to "receive and safely keep the revenues and other public moneys of the county, *and all money and funds authorized by law to be paid to him,* and disburse the same pursuant to law."

The county treasurer might have been required to give additional bonds for moneys by him received as treasurer of the Drainage District. Such a requirement was not in contravention of, but in addition to, his liability as the county treasurer for moneys and funds authorized by law to be paid to him.

Our conclusion is that the statute which made the county treasurer the treasurer of the Special Drainage District did not create a new office, but merely added new duties to the incumbent of the existing office of county treasurer; that the sections of the statute

---

amount of money likely to come into his hands in any one year, as such treasurer: Provided, that this shall not apply to the county treasurer when his official bonds are deemed sufficient." Smith-Hurd Rev. St. Ill. 1933, c. 42, § 84; chapter 42, par. 122, Cahill's Ill. Rev. Stat.

"71. The county treasurer of the county in which the proceedings for the organization of a special drainage district are commenced and district organized, shall be the collector and treasurer of such district. He shall give bond to the commissioners in such sum as they may fix, not less than double the amount likely to come into his hands in any one year, which bond shall be signed by two responsible securities, approved by the commissioners, and filed and recorded in the office of the clerk: Provided, where the district lies in two or more counties, the commissioners may appoint the county treasurer of either county as treasurer for the district." Smith-Hurd Rev. St. Ill. 1933, c. 42, § 156; chapter 42, par. 194, Cahill's Ill. Rev. Stat.

"4. The county treasurer shall receive and safely keep the revenues and other public moneys of the county, and all money and funds authorized by law to be paid to him, and disburse the same pursuant to law. * * *" Smith-Hurd Rev. St. Ill. 1933, c. 36, § 4.

which provided for a bond to secure the funds received from Drainage District assessments merely provided for an additional bond which the county treasurer was required to give, but which under certain circumstances (if the official bond were sufficient) could be waived or not required; that his liability extended to the improper disbursement of funds which came to him lawfully and which were by statute authorized to be paid to him as county treasurer; that such liability was a county treasurer's liability for which his surety as county treasurer was also liable.

It is further argued by appellant, however, that there was no adjudication by the commissioners as to the effect that the official bond of the county treasurer was deemed sufficient. This was not necessary. If appellant's bond covered the county treasurer's liability, as we hold it does, it is of no consequence that additional or more adequate coverage by surety bonds was not exacted. It is the giving of the bond which covers the liability rather than the action of the officials whose duty it is to approve or require a bond that fixes the liability of a surety. Surety bonds are executed for the protection of interested parties. Liability to such parties cannot be avoided because of the failure of officials to approve the bond executed, or because the bond is greater or less than what should or might have been required. Mechem on Public Officers, § 285.

 *Interest.* Appellant does not deny liability for interest, but insists that interest was allowed from a date earlier than was proper. Its position is that the interest should be computed only from the date the bonds matured. The case of Conway v. City of Chicago, 237 Ill. 128, 86 N. E. 619, cited by appellant, sustains this contention. The contract being an Illinois contract, we adopt the rule as there announced. Illinois Surety Company v. John Davis Company, 244 U. S. 376, 381, 37 S. Ct. 614, 61 L. Ed. 1206.

Until the bonds matured it was unknown whether funds would be available to meet the maturing obligations. In the instant case the landowners made voluntary payments of a considerable sum. The sums by them paid to the county treasurer were used to reduce the bond obligations.

This action was for the benefit of the bondholders. Until and unless there was a default in their bonds, there was no liability either of the treasurer or his surety to them. They cannot enforce a liability that might have existed in favor of the Drainage District.

In concluding that interest should run from the date of the maturity of the bonds, we are assuming that the owners of the bonds demanded payment upon their maturity.

This disposition of the appeal would result in a modified affirmance but for the fact that we are not able definitely to ascertain the due dates of the bonds held by the various parties for whom this action was brought. It will save time and result in a greater accuracy if the cause be remanded to the District Court where proof may be furnished and computations of interest made in accordance with the rule here announced.

The decree is reversed with directions to enter a new decree in favor of appellees and for the benefit of the bondholders in the sum of $15,740.99, together with interest at the rate of five per cent. from the date of the maturity of the bonds together with the costs of the action in the District Court. Costs upon this appeal will be borne equally by the parties.